**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| MATTHEW WILKINSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UMPQUA BANK,<br><br>Defendant. | Case No.<br><br>**DEFENDANT UMPQUA BANK'S NOTICE OF REMOVAL**<br><br>Removal from the Superior Court of the State of Washington for the County of Pierce, Case No. 23-2-09555-9 |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Defendant Umpqua Bank, pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act of 2005 or "CAFA"), 1441, and 1446, hereby files this Notice of Removal of this action from the Superior Court for the State of Washington in and for Pierce County, to the United States District Court for the Western District of Washington, and in support thereof states as follows:

**I.    STATEMENT OF JURISDICTION**

1.    This Court has jurisdiction over Plaintiff's claims pursuant to CAFA, which amended 28 U.S.C. § 1332 to provide that a putative class action is removable to federal court if: (1) the proposed class consists of at least 100 members; (2) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (3) one member of the proposed class is a citizen

DEFENDANT UMPQUA BANK'S
NOTICE OF REMOVAL- 1



1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • (206) 393-5400

of a state different from any defendant. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions pursuant to 28 U.S.C. §§ 1441(a) and 1446. As demonstrated below, this action meets all of CAFA's removal requirements and is timely and properly removed by the filing of this Notice.

## II.     PLEADINGS, PROCESS, AND ORDERS

2. Plaintiff Matthew Wilkinson ("Plaintiff") commenced a civil action styled *Matthew Wilkinson, individually and on behalf of all others similarly situated v. Umpqua Bank* in the Superior Court of the State of Washington for the County of Pierce, by filing a Class Action Complaint on September 7, 2023, Case No. 23-2-09555-9 (the "State Court Action").

3. By email dated December 1, 2023, counsel for Umpqua Bank notified Plaintiff's counsel that service had not yet been effected in this case and that the Affidavit of Service on file was incorrect and should be replaced by corrected information. A copy of this email communication is included in the email string attached to this Notice as **Attachment 1**. By response later that day, Plaintiff's counsel indicated the incorrect Affidavit of Service would be corrected and asked counsel for Umpqua Bank to accept service. *Id.* By responsive email on December 8, 2023, counsel for Umpqua Bank accepted service effective December 1, 2023. *Id.*

4. Copies of the Case Information Cover Sheet, Order Setting Original Case Schedule, Summons, and Affidavit of Service[1] are attached to this Notice as **Exhibit A**. A copy of the Complaint is included with this Notice as **Attachment 2** pursuant to LCR 101(a)(b)(1), and the Civil Cover Sheet is included as **Attachment 3** pursuant to LCR 101(a)(b)(4). Umpqua Bank is informed and believes that the aforementioned documents and exhibits include all of the process, pleadings and orders on file in the State Court Action. *See* 28 U.S.C. § 1446(a).

---

[1] As stated in the text, service was effected in this case as of December 1, 2023, and statements to the contrary in the Affidavit of Service are not correct. *See* Attachment 1.



DEFENDANT UMPQUA BANK'S
NOTICE OF REMOVAL- 2

1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • (206) 393-5400

5. As set forth in the Complaint, Plaintiff brings claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, violation of the Washington State Consumer Protection Act (RCW 19.86.010 *et seq.*), and injunctive relief based on a data incident involving Umpqua Bank's file transfer vendor, discovered in June of 2023 (the "Incident"). (Compl. ¶¶ 152-226.)

6. In addition to his individual claims, Plaintiff purports to represent a nationwide class of "All residents of the United States whose Private Information was accessed or acquired during the data breach event that Defendant has stated commenced on or about May 27-31, 2023 (the "Class")." (Compl. ¶ 135.) And a Washington subclass of "All residents of the state of Washington whose Private Information was accessed or acquired during the data breach event that Defendant has stated commenced on or about May 27-31, 2023 (the "Washington Subclass"). (*Id.*)

7. By filing this Notice of Removal, Umpqua Bank does not intend to waive, and hereby reserves, any objections as to venue, the legal sufficiency of claims alleged in the Complaint, and all other defenses. Umpqua Bank reserves the right to supplement and amend this Notice of Removal.

### III.   JURISDICTION PURSUANT TO CLASS ACTION FAIRNESS ACT

8. Section 4 of CAFA sets forth the general rule that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2); (d)(6) (explaining claims may be aggregated).

9. Section 4 of CAFA further states that the jurisdictional rule set forth in 28 U.S.C. § 1332(d)(2) applies only to class actions in which the number of members of all proposed plaintiff

DEFENDANT UMPQUA BANK'S
NOTICE OF REMOVAL- 3



1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • (206) 393-5400

classes, in the aggregate, is 100 or more. *See* 28 U.S.C. § 1332(d)(5).

10. This Court has jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d), and this action may be removed by Umpqua Bank pursuant to the provisions of 28 U.S.C. § 1441(a), because the proposed plaintiff class consists of at least 100 members, the total amount in controversy exceeds $5,000,000, and there is diversity between at least one proposed class member and the defendant.

11. Venue lies in the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 84(b), 1441, and 1446(a). This action was originally brought in the Pierce County Superior Court, which is located within the Western District of Washington. Venue is proper with this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

### A. The Putative Class Contains At Least 100 Members

12. Plaintiff brought this action on behalf of himself and all others similarly situated as a class action pursuant to Washington Rule of Civil Procedure 23, which authorizes an action to be brought by one or more representative persons as a class action. (Compl. ¶ 148.) Plaintiff seeks to represent a purported class of "all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. (Compl. ¶ 8.)

13. Plaintiff alleges that the Putative Class Members are "so numerous that joinder of all members is impracticable." (*Id.* ¶ 137.)

14. Plaintiff alleges the putative class consists of "over 65,000 individuals." (*Id.*)

### B. There Is Diversity of Citizenship Between At Least One Proposed Class Member and Umpqua Bank.

15. CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C § 1332(d)(2)(A); *Armstrong v. Argosy Educ. Grp. Inc.*, No. C14-852 MJP, 2014 WL 12674280, at *2 (W.D. Wash. Aug. 5, 2014) (explaining that "CAFA has no 'complete diversity' or forum defendant rule, but rather a 'minimal diversity' requirement which is satisfied wherever a single member of the proposed class is from a different state than any defendant"). Complete diversity of citizenship exists here because Plaintiff and Umpqua Bank are citizens of different states.

16. <u>Plaintiff's Citizenship.</u> For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *See Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986). Plaintiff avers that he is a citizen of Washington. (Compl. ¶ 13.) Accordingly, Plaintiff is a citizen of the State of Washington for purposes of removal. *See, e.g., Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 885-86 (9th Cir. 2013) (holding that, in connection with removal to federal court, a person's continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change").

17. <u>Defendant's Citizenship.</u> Under § 1332(d)(10), "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." *See also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). Defendant is an Oregon state-chartered bank with its principal place of business in Oregon. *See Nhu Dinh v. Umpqua Bank*, Case No. 3:23-cv-05980 (W.D. Wash. removed on Oct. 30, 2023); *Marc W. Shettlesworth v. Umpqua Bank,* Case No. 3:23-cv-05941

(W.D. Wash. removed on October 20, 2023); *Bassam Zaafan v. Umpqua Bank*, Case No. 3:23-cv-05884-DGE (W.D. Wash., removed on September 29, 2023). Accordingly, Defendant is a citizen of Oregon.[2]

### C. The Alleged Amount in Controversy Exceeds $5,000,000

18. Under CAFA, the articulated claims of all class members are aggregated to determine if the amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Significantly, Congress intended federal jurisdiction to exist under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.,* damages, injunctive relief, or declaratory relief)." Staff of S. Comm. on the Judiciary, 109th Cong., *Rep. on The Class Action Fairness Act of 2005*, 42 (Comm. Print 2005). The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

19. When a plaintiff fails to plead a specific dollar amount of damages and the amount in controversy is not necessarily "facially apparent" from the complaint, "the court may consider facts in the removal petition" to determine the amount at issue. *Kroske v. U.S. Bank Corp.*, 432

---

[2] Umpqua Bank reserves the right to present additional evidentiary support should Plaintiff challenge federal jurisdiction. *See Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir. 1998) ("The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." (quoting *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987))). *See also Dart Cherokee*, 574 U.S. at 89 (noting that "[e]vidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation" that the amount in controversy exceeds the jurisdictional threshold).

F.3d 976, 980 (9th Cir. 2005). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 89 (2014). To satisfy this burden, a defendant may rely on a "reasonable" "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n Arias we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements," quotations and citations omitted). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87.

20. Umpqua Bank denies Plaintiff's allegations of liability, fault, or other wrongdoing and that Plaintiff has suffered any cognizable harm. Umpqua Bank intends to vigorously defend against all of Plaintiff's causes of action. Nevertheless, without admitting that Plaintiff and/or any member of the putative class can recover any damages, when one considers the number of alleged Putative Class Members and the causes of action cited, the aggregate amount in controversy presented by this case exceeds $5,000,000.[3]

21. The Complaint alleges Plaintiff and the class members have suffered injuries including "years of ongoing identity theft, [and] financial fraud." (Compl. ¶ 51 ("In the Notice,

---

[3] Defendant provides these calculations solely to demonstrate that the amount in controversy in this case exceeds the jurisdictional minimum. Defendant makes no admission of any liability or damages with respect to any aspect of this case.

Defendant offers to cover identity monitoring and theft resolution services for a period of 24 months. This is wholly inadequate to compensate Plaintiff and Class Members as it fails to provide for the fact victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, financial fraud[.]"); Compl. ¶ 120 ("Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for their lifetimes.")). Equifax advertises that its credit monitoring services cost between $59.40 per year for basic plans to $239.40 per year for premium plans. *Compare our Value Products*, EQUIFAX (last visited Dec. 13, 2023), https://www.equifax.com/personal/products/value-product-comparison/ ($4.95 per month for Equifax's Credit Monitor program); *Compare our Premium Products*, EQUIFAX (last visited Dec. 13, 2023), https://www.equifax.com/personal/products/credit/monitoring-product-comparison/ ($24.95 per month for Equifax Complete Premier program). Accordingly, even using the low end of these price ranges, three *months* of credit monitoring, alone, times the pleaded class size (65,000 individuals), would put the amount in controversy at $965,250.00 (($4.95 x 3) x 65,000). Courts have found this sufficient to establish the CAFA amount in controversy in similar data incident cases. *Copple v. Arthur J. Gallegher & Co.*, No. C22-0116-LK-SKV, 2022 WL 3357865, at *7 (W.D. Wash. Aug. 2, 2022) (denying motion to remand).[4]

### III.   TIMELINESS OF REMOVAL

22.   This action has not previously been removed to federal court.

23.   This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides that such Notices "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such

---

[4] Further, Plaintiff claims the Data Incident resulted in the "diminution of value of their PII." (Compl. ¶ 91.) And Plaintiff claims that personal information "can be sold at a price ranging from $40 to $200." (*Id.* ¶ 58.) Applying the low end of Plaintiff's estimated range to the alleged class of over 65,000 individuals, this alleged harm alone would exceed $2,600,000.



DEFENDANT UMPQUA BANK'S
NOTICE OF REMOVAL- 8

1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • (206) 393-5400

action or proceeding is based." This period commences upon proper service of the Summons and a copy of the Complaint. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). As explained above, no proper service was effected in this case until counsel for Umpqua Bank accepted service effective December 1, 2023.  Umpqua Bank has filed this Notice of Removal within 30 days of December 1, 2023, the date on which service was accepted.

**IV.    NOTICE TO PLAINTIFF**

24.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiff's counsel and filed with the Superior Court of the State of Washington for the County of Pierce.

**WHEREFORE**, for all of the foregoing reasons, Umpqua Bank hereby removes the State Court Action now pending in the Superior Court of the State of Washington for the County of Pierce, to the United States District Court for the Western District of Washington.

DATED this 21st day of December, 2023.

                POLSINELLI PC

                By: */s/ Jessica M. Andrade*
                    Jessica M. Andrade, WSBA #39297
                    1000 2nd Avenue, Suite 3500
                    Seattle, WA 98104
                    Telephone: (206) 393-5400
                    Facsimile: (206) 393-5401
                    Email: jessica.andrade@polsinelli.com

                *Attorneys for Defendant Umpqua Bank*



## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury under the laws of the State of Washington and the United States of America that on the date below, I transmitted the foregoing Notice of Removal to the following parties of record via electronic mail and first-class U.S. mail:

Douglas H. Sanders
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
1311 Ponce de Leon Ave.
San Juan, PR 00907
dsanders@milberg.com
516-741-5600

Kristen Lake Cardoso
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
cardoso@kolawyers.com
954-990-2218

*Attorneys for Plaintiff*

DATED this day 21 of December, 2023, at Seattle, Washington.

>  */s/ Jessica M. Andrade*
>  Jessica M. Andrade, WSBA #39297
>  POLSINELLI PC
>  jessica.andrade@polsinelli.com

DEFENDANT UMPQUA BANK'S
NOTICE OF REMOVAL- 10



1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • (206) 393-5400